UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINCOLN GENERAL INSURANCE COMPANY, | : | CIVIL NO: 1:12-CV-01534 |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| A&G COMMERCIAL TRUCKING, INC, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Introduction.**

In this breach-of-contract case, the plaintiff, an insurance company, has sued the defendants for failing to pay deductibles due under three insurance policies. The defendants filed a motion to dismiss arguing that the court lacks personal jurisdiction over them. Because the plaintiff has presented a prima facie case of personal jurisdiction and the defendants have not presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable, we will recommend that the motion to dismiss for lack of personal jurisdiction be denied.

## II. Background and Procedural History.

The plaintiff, Lincoln General Insurance Company ("Lincoln General"), is a property-casualty insurance company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in York, Pennsylvania. Lincoln General has brought suit against A&G Commercial Trucking, Inc. ("A&G) and GKD Management, LP ("GKD"). Lincoln General alleges that A&G is a national trucking company organized under the laws of the State of Arizona with its principal place of business in Crump, Tennessee, and GKD is a limited partnership organized under the laws of the State of Arizona with its principal place of business in Tucson, Arizona. This court has jurisdiction under 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

Lincoln General alleges the following facts in its complaint. A&G, which is the general partner of GKD, specializes in the transportation of manufactured and/or modular housing. In 2005, Lincoln General issued an insurance policy to A&G and GKD providing liability and uninsured motorist coverage. The policy provided that Lincoln General has the right and duty to defend any insured against a claim or suit and to investigate and settle any claim or suit as it deems appropriate. The premium for the policy was reduced because A&G and GKD agreed to pay Lincoln General a $10,000 deductible for each claim settled by

Lincoln General under the policy. The policy included the following provisions regarding the deductible:

> **D. [LINCOLN GENERAL'S] RIGHT TO REIMBURSEMENT**
>
> To settle any claim or "suit" [Lincoln General] may pay all or any part of any deductible shown in the Schedule. If this happens you must reimburse [Lincoln General] for the deductible or the part of the deductible [Lincoln General] paid.
>
> **ADDITIONAL PROVISIONS AGREEMENT**
>
> Liability Claims Security Escrow Account $120,000
>
> In consideration of the reduced premium charged for the Liability Deductible the Insured agrees to maintain the Liability Claims Security Escrow Account as indicted above. The security is subject to a monthly review and adjustment is based upon the reserves within the deductible amount.
>
> It is hereby understood and agreed that the insured's failure to reimburse [Lincoln General] for payment of the Liability Deductible or the insured's failure to replenish the Liability Claims Security Escrow Account, within 60 days of billing, will be deemed failure to pay the policy premium and subject to the policy provisions for non-payment of premium. If the policy is cancelled for non-payment of premium for failure to reimburse the Liability Deductible or replenish the Claims Security Escrow Account the insured agrees to be responsible for all legal costs and expenses incurred by [Lincoln General] including, without limitation, reasonable attorney's fees, incurred by [Lincoln General] in connection with the collection or enforcement of this Agreement.

*Doc. 1-1* at 13.

In 2006 and 2007, Lincoln General issued insurance policies to A&G and GKD containing terms similar to the terms in the 2005 policy, but the

deductible in relation to each claim was $100,000 in the 2006 policy and $50,000 in the 2007 policy.

Lincoln General settled two claims under the 2005 policy resulting in A&G and GKD owing Lincoln General $11,300 in deductible reimbursements, three claims under the 2006 policy resulting in A&G and GKD owing Lincoln General $116,355.53 in deductible reimbursements, and 14 claims under the 2007 policy resulting in A&G and GKD owing Lincoln General $184,128.74 in deductible reimbursements. Although Lincoln General demanded that A&G and GKD pay these amounts, A&G and GKD refused and failed to pay these amounts, and as a result, Lincoln General brings this case for breach of contract.

A&G and GKD filed a motion to dismiss claiming that the court lacks personal jurisdiction over them. That motion to dismiss, which has been fully briefed and which has been referred to the undersigned, is addressed in this Report and Recommendation.

**III. Rule 12(b)(2) and Personal Jurisdiction Standards.**

A defendant may raise the defense of lack of personal jurisdiction in a motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(2). "Once a defendant

challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Unless the court holds an evidentiary hearing, at the motion-to-dismiss stage the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under a prima facie standard, "the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor," but "the ultimate burden remains on the plaintiff to demonstrate the existence of jurisdiction by a preponderance of the evidence." *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 476 (3d Cir. 2011). The plaintiff establishes a prima facie case "by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)(quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434 (3d Cir.1987)).

Federal Rule of Civil Procedure 4 authorizes a federal court to assert personal jurisdiction over a nonresident defendant to the extent permissible under the law of the state where the district court sits. *Id.* at 1221. The forum state in this case is Pennsylvania, and Pennsylvania law permits courts within Pennsylvania to exercise jurisdiction "to the fullest extent allowed under the Constitution of the

United States" and provides that jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b).  Thus, this court may properly exercise jurisdiction over a defendant as long as the exercise of that jurisdiction does not violate the due process rights of the defendant. *Mellon, supra*, 960 F.2d at 1221.

Proceeding to the constitutional inquiry, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.,* 537 F.3d 290, 299-300 (3d Cir. 2008)(quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* at 300 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

There are two types or personal jurisdiction—general jurisdiction and specific jurisdiction. *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." *Id.*  On the other hand, even in the absence of such systematic and continuous contacts with the forum state,

"[s]pecific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Id.* "The central concern of [the] jurisdictional inquiry is the relationship among the defendant, the forum, and the litigation." *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985). The court conducts a three-part inquiry to determine whether it has specific jurisdiction over the defendant. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King, supra,* 471 U.S. at 472). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Third, if the court finds that the prior requirements are met, it may consider additional factors to ensure that exercising jurisdiction would be consistent with "'fair play and substantial justice.'" *Id.* (quoting *Burger King, supra,* 471 U.S. at 476 (quoting *Int'l Shoe, supra,* 326 U.S. at 320)).

## IV. Discussion.

### A. The Parties' Arguments and Evidence.

A&G and GKD contend that they have no connection whatsoever to Pennsylvania, and, thus, this court does not have personal jurisdiction over them.

They have submitted a declaration from Gregory A. Deline, an officer of A&G, who states the following regarding A&G and GKD and their lack of contacts with Pennsylvania.

GKD, which was formed in 2004, is a limited partnership formed under the laws of Arizona, and A&G, which was also formed in 2004 and is the sole general partner of GKD, is a corporation formed under the laws of Arizona. *Doc. 6-2* at ¶¶4, 5 & 7. GKD operates a commercial trucking business that specializes in the transportation of manufactured housing, and its customers and clients are manufacturers of manufactured housing. *Id.* at ¶6. The principal offices of both A&G and GKD are located in Ashland, Missouri, and GKD has trucking terminals and offices in Missouri, Alabama, Texas, and Tennessee. *Id.* at ¶¶8-9. Neither A&G nor GKD have or have ever had any offices or terminals in Pennsylvania. *Id.* at ¶9.

Through its independent contract drivers, GKD picks up the manufactured homes at the manufacturers' locations and transports them to retail locations. *Id.* at ¶10. Since 2005, the manufacturers who have been serviced by GKD have had manufacturing locations in Tennessee, Alabama, and Indiana. *Id.* at ¶11. None of the manufacturers which GKD serves or has served have been located in Pennsylvania. *Id.*

Neither A&G nor GKD have ever qualified or registered to transact business in Pennsylvania as foreign entities or otherwise; nor have they ever applied for or obtained any business licenses from Pennsylvania or any other jurisdiction within Pennsylvania. *Id.* at ¶12. They do not have or ever have had a business or office address, telephone number, mailbox, or drop box located in Pennsylvania, and they do not have or ever have had any employees, officers, directors, or agents with offices or residence in Pennsylvania. *Id.* at ¶¶13-14. Neither A&G nor GKD own, use, or possess or have ever owned, used, or possessed any real property located in Pennsylvania, and they do not have or have ever had any bank account located within Pennsylvania or with any banks that are located within Pennsylvania. *Id.* at ¶¶15-16. Neither now nor at any time in the past, have they done or conducted any marketing, advertising, or soliciting in Pennsylvania; nor at any time have they applied to any governmental unit within Pennsylvania for any certificate, license, permit, registration, or similar instrument or authorization. *Id.* at ¶¶17-18.

Neither A&G nor GKD at any time have had any employees. *Id.* at ¶20. Rather, GKD uses the services of independent contractor truck drivers, who are not employees. *Id.* Neither A&G nor GKD dictates to those drivers how to complete the routes that they drive. *Id.* While it is possible that some of those drivers have driven through Pennsylvania while working as independent contractors for GKD,

9

the routes that those drivers use are entirely up to the drivers and/or permitting authorities and are not dictated or directed by A&G or GKD. *Id.*

A&G and GKD did not apply directly to Lincoln General for the issuance of the insurance policies at issue in this case, and they did not deal directly with Lincoln General with respect to applying for the policies. *Id.* at ¶21. Rather, A&G and GKD applied for and procured the policies through an insurance broker or producer, whose offices are in Atlanta, Georgia. *Id.*

Based on their lack of contacts with Pennsylvania, A&G and GKD contend that this court does not have either general jurisdiction or specific jurisdiction over them. While Lincoln General concedes that the court does not have general jurisdiction over the defendants, it contends that the court has specific jurisdiction over the defendants based on their claims-related activities. *See Doc.12* at 3-4. To that end, Lincoln General submitted an affidavit of Joseph Fiamingo, who is the Treasury Manager of Lincoln General. Fiamingo states that, during the course of their relationship with Lincoln General, A&G and GKD filed 198 claims under the insurance policies at issue in this case. *Doc. 12*-1 at ¶4. According to Fiamingo, "these claims generated a series of contacts with [Lincoln General] in York, such as the filing of a notice of claim, and a myriad of communications between Lincoln General and the defendants required to adjudicate the claims." *Id.* at ¶5. As a

result of the claims filed, Lincoln General paid $2,848,160 to A&G and GKD. *Id.* at ¶6. Pursuant to their obligations under the policies, A&G and GKD provided Lincoln General with a letter of credit, issued from a bank in Alabama, to collateralize their obligations to pay the deductibles. *Id.* at ¶7 and *Doc. 12-5*. But when Lincoln General used the letter of credit to satisfy certain unpaid deductibles, A&G and GKD complained and then filed a lawsuit against Lincoln General in Missouri, during the course of which they took the depositions of certain Lincoln General employees located in York, Pennsylvania. *Doc. 12*-1 at ¶¶8-9. The lawsuit in Missouri was ultimately settled. *Id.* at ¶8. Fiamingo attached to his affidavit, a letter sent from A&G to several Lincoln General employees, including two in York, Pennsylvania, objecting to Lincoln General drawing down the letter of credit and a similar letter from an attorney apparently representing A&G. *See Doc. 12-6.*

Characterizing Fiamingo's affidavit as bare bones and lacking in specifics, A&G and GKD assert that Lincoln General has not carried its burden of establishing personal jurisdiction. More specifically, they assert that Lincoln General has provided no details concerning the issues that bear on the jurisdictional question before the court. In that regard, they assert that just because Lincoln General's principal offices are located in Pennsylvania does not mean that the claims process was centered in Pennsylvania or even that it involved

11

Pennsylvania at all, and they argue that Fiamingo's affidavit is not specific about whether the claims process had any connection with Pennsylvania. Further, they contend that there is no evidence that they made payments of the policy premiums to Lincoln General or its agents in Pennsylvania or, for that matter, that they sent any payments of any nature whatsoever to Pennsylvania. They also contend that there is no evidence about how the claims were made on the insurance policies, where the employees or representatives of the Lincoln General who dealt with those claims were located, whether they submitted any claims materials to anyone in Pennsylvania, whether they visited Pennsylvania, whether they entered into any contract in Pennsylvania, whether they owned or leased any property in Pennsylvania, or whether they ever maintained any bank accounts in Pennsylvania.

### B. <u>Purposeful Availment</u>.

The first step in the specific-jurisdiction analysis is determining whether the defendant "'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *O'Connor, supra,* 496 F.3d at 317 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of

another party or a third person.'" *Burger King, supra,* 471 U.S. at 475-76 (citations and footnote omitted). To qualify as purposeful availment, the defendant must deliberately target the forum. *O'Connor, supra,* 496 F.3d at 317. Thus, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.* Also, "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient." *Mellon, supra*, 960 F.2d at 1223. "But a contract is typically an intermediate step between past negotiations and future transactions, and . . . 'it is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.'" *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008)(quoting *Burger King, supra,* 471 U.S. at 479).

Although the evidence that Lincoln General submitted in the form of the affidavit of Fiamingo is sparse, we conclude that Lincoln General has satisfied its obligation to present a prima facie case that, through their claims activities, A&G and GKD purposely availed themselves of the privilege of conducting activities within Pennsylvania. Fiamingo states in his affidavit that A&G and GKD filed 198 claims under the policies, that these claims generated a series of contacts with

13

Lincoln General in York, such as the filing of notices of claims and a myriad of communications required to adjudicate the claims. Such contacts are relevant to the jurisdictional question. *Cf. Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152-53 (3d Cir. 1996)(concluding that informational communications in that case, such as letters and telephone calls, in furtherance of a contract not sufficient to establish purposeful availment, but distinguishing cases where, for example, the defendant sent payments to the forum state or engaged in extensive post-sale contacts with the plaintiff in the forum state). Even though, as A&G and GKD assert, Fiamingo does not specifically set forth the nature of the claims procedure, construing his affidavit in the light most favorable to Lincoln General, as we must at this stage of the proceedings, the affidavit leads to a reasonable inference that the claims procedure involved an extensive series of contacts over a prolonged period of time with Pennsylvania. Accordingly, at this stage of the proceedings, we conclude that Lincoln General has satisfied its burden at the first step of the specific-jurisdiction analysis.

## C. **Relationship Between the Claim and the Contacts**.

The second step in the specific-jurisdiction analysis is determining whether the plaintiff's claim "'arises out of or relates to' at least one of" the defendant's contacts with the forum. *O'Connor, supra,* 496 F.3d at 318. While the Third Circuit has refrained from adopting "a definitive approach to the relatedness requirement," it has held that the defendant's contacts with the forum must be more than merely the "but-for" cause of the plaintiff's claim. *Id.* at 321-22 ("But although the analysis may begin with but-for causation, it cannot end there."). "Because personal jurisdiction can be conceptualized as a quid pro quo by which the defendant submits to the forum's jurisdiction in exchange for the benefit of its laws, the Third Circuit suggests that '[t]he causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.'" *Tamburo v. Dworkin*, 601 F.3d 693, 708-09 (7th Cir. 2010)(quoting *O'Connor, supra*, 496 F.3d at 323). "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

This case is a breach of contract case based on the alleged failure of A&G and GKD to pay deductibles due under the insurance policies. Lincoln General asserts that the claims made by A&G and GKD on the policies gave rise to their duty to pay the deductibles and that A&G and GKD's claims-related activity in Pennsylvania relate directly to the breach of contract claim in this case. Given the close relationship between the breach of contract claim and the purported claims-related activities of A&G and GKD in Pennsylvania, we conclude that, at this stage of the proceedings, Lincoln General has satisfied its burden at the second step of the specific-jurisdiction analysis.

### D. **Fair Play and Substantial Justice.**

The first two steps in the specific-jurisdiction analysis "determine whether a defendant has the requisite minimum contacts with the forum." *D'Jamoos, supra,* 566 F.3d at 102. At the third step of the analysis, the court considers "whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor, supra,* 496 F.3d at 324 (quoting *Int'l Shoe, supra,* 326 U.S. at 316). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'" *Id.* (quoting *Burger King, supra,* 471 U.S. at 477). The court may consider a number of factors in this regard including: "(1) the burden to defendant of litigating in the forum, (2) the forum's interest in adjudicating the lawsuit, (3) 'the plaintiff's interest obtaining convenient and effective relief,' (4) the interstate judicial system's interest in resolving conflicts efficiently, and (5) 'the shared interest of the several states in furthering fundamental substantive social policies.'" *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 618 (M.D. Pa. 2009)(quoting *Pennzoil Prods. Co. v. Colelli & Assocs.,* 149 F.3d 197, 205–06 (3d Cir. 1998)).

A&G and GKD have not presented any evidence or any argument about this last step in the specific-jurisdiction analysis. Thus, we cannot conclude at this stage of the proceedings that the exercise of personal jurisdiction over A&G and GKD does not comport with traditional notions of fair play and substantial justice.

### E. Summary.

Having determined that Lincoln General has established a prima facie case of jurisdiction and that A&G and GKD have not presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable,

we will recommend that A&G and GKD's motion to dismiss for lack of personal jurisdiction be denied.

V. **Recommendations.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that A&G and GKD's motion (doc. 6 ) to dismiss for lack of personal jurisdiction be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23rd day of May, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge